IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KASSANDRA ROBINSON, | ) | CASE NO. 5:06CV1792 |
| | ) | |
| | ) | JUDGE ADAMS |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MARC GLASSMAN, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on referral from Judge Adams. Plaintiff, Kassandra Robinson ("Robinson"), filed an amended complaint on March 16, 2007 against Marc Glassman Inc. ("Marc's") and four employees of Marc's, Carl Brezina ("Brezina"), Todd Gray ("Gray"), Ashley Glor ("Glor") and Vickie Whann ("Whann"), alleging violations of 42 U.S.C. § 2000 et seq. ("Title II"), 42 U.S.C. § 1981 ("§ 1981"), Ohio Rev. Code § 4112(G) ("§ 4112.02(G)"), intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of duty to warn an invitee of dangerous conditions and make premises safe.

Pending is Defendants' Motion for Summary Judgment; the motion incorporates arguments previously set forth in a Motion to Dismiss. Plaintiff opposes the motion. For the reasons set forth below, the court recommends that the Motion for Summary Judgment be granted

and all claims dismissed.[1]

I.

The facts, construed in favor of plaintiff as they must be at this stage of the proceedings, are as follows. On July 28, 2005 Robinson went to the Marc's store in Cuyahoga Falls, Ohio. As she approached the door to the store, she noticed a man talking to her and pointing to her. The man was dressed entirely in white clothing, was balding, and was about 80. He was about 5"5" and weighed between 160-180 pounds. The man carried a cane and a plastic bag. As they walked through the door together, the man said to her, "You poor black niggers need to go to your own stores, you black niggers need to stay out of our neighborhoods."[2] Plaintiff responded to him by saying, "What?" The man responded, "You heard me, you poor black nigger, get away from me. I don't want to know you." At no time was there any physical contact between the man and Robinson.

Once inside the door, the man, later identified as Burns Stringer ("Stringer"), stood in the front of the store near the row of shopping carts. Robinson immediately went to the customer service desk. Stringer continued to yell racial epithets and point to Robinson. Whann was at the customer service desk when Robinson approached. According to Robinson, she told Whann that the man followed her into the store and was calling her "black niggers and poor niggers" and she wanted him removed from the store. Whann knew Stringer from prior incidents at the store. She laughed and told Robinson, "Oh, just ignore him. He does these types of things all the time." Although Robinson denies it, according to Whann Robinson began yelling and cursing, using the

---

[1] The Motion to Dismiss would become moot.

[2] All quotations are from plaintiff's deposition taken on March 12, 2007.

"F" word over and over.

Robinson allegedly was afraid that Stringer would attack her physically so she went over to where he was standing and obtained a shopping cart to use to defend herself. When she returned to the customer service desk, Whann called for Glor, who apparently was working near her, to intercede. Robinson repeated to Glor the comments that Springer was making and asked her to remove him from the store. Glor said, "No." After asking Glor again to remove him, Robinson began to curse, using the "F" word repeatedly. At that point Glor told Robinson to leave the store.[3] Instead of leaving, Robinson took her shopping cart and went toward the back of the store. Her intention, she testified, was to wait until Stringer left the store and then leave. Robinson testified that Glor told her to leave the store for using profanity and she felt that Glor was out of line.

Robinson testified several times that at this point she did not intend to continue shopping, stating:

> Well, at first, you know, I was going to shop once I went and reported it at first. I was doing the rest of the shopping and everything, but by the time that they got to the second girl and he continued to do this for a good six-seven minutes and no one would help me, no one seemed to care, I didn't feel comfortable shopping in that store. I didn't want to spend my money in that store anymore.

Deposition of Robinson at 86-87. Robinson further testified that she did not want to spend her money in Marc's "[b]ecause they abused me and harassed me and treated me like I was less than a human being. I didn't want to spend my money in there anymore."

Eventually Robinson walked to the front of the store. She saw Stringer walking out

---

[3]Glor testified that she told Robinson to stop cursing because customers with children were complaining and that she gave Robinson the alternative to either stop cursing or leave the store.

3

and talking with Gray.  Still she did not feel comfortable shopping, even with Stringer out of the store, "after all that had taken place."  When asked how she felt the employees had treated her badly, Robinson responded:

> The way I feel that they treated me badly is not only did they continue to make me keep repeating what the man was saying as if they did not hear him, they did not understand.
> When I told them I was afraid, they did not escort him out.  They showed no sort of compassion concerning me or my feelings, and so due to that fact I did not want to shop in that store after that point.

Tr. at 97.

Plaintiff said that even after Stringer left, she did not feel comfortable shopping in the store because Brezina ordered her to leave.  Robinson had followed Gray and Stringer outside.  Because she was still afraid, even though Stringer was proceeding away from the store, she went back into Marc's to ask for an escort to her car or request that the police be called.  According to her, when she approached Glor and Brezina and asked why she had been told by Glor to leave the store, Brezina said, "You can shut up or you can get out right now before the police come."  She then went outside to wait for the police.  After the police arrived and Stringer was gone, Gray apologized to Robinson and invited her to return to the store, but she refused because of the way she had been treated by employees.

Robinson was asked how Whann discriminated against her.  She replied, "When I told her that he was – at the beginning of the conversation when I told her the initial conversation when he called me 'poor black nigger and black trash' and she said 'Ignore  him,' and laughed in my face."  Robinson felt Whann should have immediately called the police and had Stringer removed. Robinson then was asked how Glor discriminated against her.  She replied, "She – after she was made aware, after I verbally told her what had happened, she also refused to get rid of Mr.

4

Stringer, and I expressed that I was afraid and she refused to do anything as well." Again Robinson felt that Glor should have escorted Stringer out of the store.  When asked how Gray had discriminated against her, Robinson answered, "I am not for sure." As for Brezina, Robinson said that she wanted to make a written complaint about what had happened and wanted him to either escort her to the door or call the police for an escort.  He would not communicate with her and ordered her to shut up or get out of the store before the police arrived.

      The following facts are undisputed based upon the police reports and statements made to the police by Robinson.  Cuyahoga Falls Police Officers Ray, Sim and Wahl responded to a call from Marc's "in reference to an unwanted customer." Report of Officer Ray dated July 28, 2005, Ex. 23.  Officer Ray reported, "The subject was described as a white male in his eighties wearing all white.  Upon arrival in the area I tried to approach who I believed to be the individual involved, an individual who I believe lives at Cathedral lane [sic] apartment, and who is dealing with mental issues/possibly deaf.  I tried to catch his attention to stop and speak with me, however it didn't appear he was even aware that I was there." Officer Ray further stated Robinson told him she swore at the man and was told by the customer service person she would have to leave the store because of her vulgar language.  Officer Ray reported that Gray apologized to Robinson and that she seemed to accept the apology.  Among the exhibits are incident reports from 2004 and 2005 when police were called to apartments where Stringer was living and because of the living conditions and Stringer's mental state, the police took him to area hospitals.

      Each of the Marc's employees testified to plaintiff's behavior while in the store.  She was loud and used the "F" word regularly.  Glor called the police to have Stringer removed from the property.  Gray escorted Stringer from the store, either by pulling him out with the shopping basket

or by walking and talking beside him.

There is no evidence to support several "factual" statements made in plaintiff's opposition brief. No one, including plaintiff, testified that she was "thrown" out of the store. She was told to leave because of the use of vulgar language. In fact, she did not leave the store when Glor told her to. She went to the back of the store. There is no evidence that the police were called to evict her. Instead, the evidence is clear that the police were called to deal with Stringer. Finally when plaintiff was told to leave the store by Brezina, she testified that she left to get an escort to her car from the police because Brezina would not escort her.

## II.

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323. In this way summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250. The court's treatment of facts and inferences in a light favorable to the nonmoving party does not

relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ." *Id*. Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). A party cannot create a genuine issue of material fact through filing an affidavit which contradicts earlier deposition testimony. *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). A scintilla of evidence in favor of the nonmoving party is not sufficient. The issue which the court must determine is whether there is evidence on which a jury could reasonably find for the nonmoving party. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

### III.

#### A. Section 1981 and Section 4112.02(G) Claims.

Section 1981 reads, in relevant part:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings of the security of personas and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.
> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §1981(a), (b). The law extends to the making and enforcing of contracts with both public and private actors. § 1981(c). Sixth Circuit law requires that in order for a plaintiff to prevail on

a § 1981 claim, the person must meet the burden-shifting standard of proof established by Title VII law. *Christian v. Wal-Mart Stores, Inc.* 252 F.3d 862, 868 (6th Cir. 2001).

> Under this standard, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. To prevail, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason is not its true reason but a pretext for discrimination.

*Id.* In order to make out a prima facie case in a § 1981 commercial establishment case, plaintiff must prove (1) she is a member of a protected class, (2) she sought to make or enforce a contract for services ordinarily provided by the defendant, and (3) she was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in the (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. *Id.* at 872. In *Christian* the court explained that subpart 3(a) subsumes situations where a person has been asked to leave the premises before completing a purchase, refused service while on the premises, or refused access to the premises. In explaining subpart 3(b) the court looked to *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 707-08 (D.Md. 2000), explaining,

> Subpart (3)(b) is written as an alternative to (3)(a) to account for situations in the commercial establishment context in which a plaintiff cannot identify other similarly situated persons. Under this subpart, a retailer's "markedly hostile" conduct may "give rise to a rational inference of discrimination sufficient to support a prima facie case" without any evidence of how similarly situated persons were treated. Factors relevant to subpart (3)(b)'s "markedly hostile" component include whether the conduct "is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.

*Christian* at 871(citations omitted).

>Section 4112(G) reads in relevant part:
>
>>It shall be an unlawful discriminatory practice:
>>For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, disability, age or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev. Code § 4112.02(G). A "place of accommodation" includes "other places for the sale of merchandise." Ohio Rev. Code § 4112.01(9). With respect to § 4112.02(G) claims, the Sixth Circuit held in *Christian*: "[Plaintiff's] state law claim rises and falls with her federal claim because we evaluate Ohio state law discrimination claims generally under the same standard as federal discrimination claims." *Id. at 880. See also Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428 (6th Cir. 2004)(applying Title VII analysis of comparability to 4112.02(G)).

Defendants argue that plaintiff cannot make out a prima facie case because there is no evidence she was prevented from making a purchase while in Marc's. Instead, they argue, plaintiff chose to leave the store of her own accord without making a purchase and testified that she had no intention of making a purchase or giving any of her money to Marc's. When Glor told plaintiff to leave the store, Robinson refused to do so and proceeded to the back of the store. Robinson left the store minutes later, once Stringer was being taken out by Gray, and re-entered the store to ask Brezina to escort her to her car. Brezina told her to shut up and get out of the store. Plaintiff left to wait for a police escort to her car. Finally, after Stringer was gone and the police had arrived, Gray apologized and invited plaintiff to shop in the store. Thus defendants argue that plaintiff has offered no evidence that she was denied services that were available to a "similarly-situated" Caucasian.

9

The court concludes that there is evidence plaintiff entered Marc's intending to enter into a contract by purchasing groceries. She was not simply browsing. This is not a situation of prospective contractual relation or the loss of future contract opportunities. *Cf. Horne v. J.D. Penney Corp., Inc.*, 2006 WL 1139918 (W.D. Mich. filed April 26, 2006). Plaintiff has testified, without contradiction, that she intended to make purchases and left because of her fear of Stringer and because of the way the Marc's employees treated her. The court concludes she has satisfied the second prong of the prima facie case.[4]

With regard to prong three of the prima facie case, defendants correctly point out that plaintiff cannot show she was deprived of services while similarly-situated persons outside of the protected class were not. She certainly cannot point to Stringer because Marc's employees called the police about his conduct and led him out of the store, and, as plaintiff herself points out, Stringer had been removed from the store on previous occasions. Thus she must rely on subpart 3(b) and show that she "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."

Plaintiff lists a number of facts which she insists satisfy prong three. She points to the following actions by Marc's employees: Whann laughed at her and told her to ignore Stringer; no one stopped Stringer from continuing his racial rant; plaintiff was told to leave after she "said one curse word;" managers were called to remove plaintiff; defendants called the police to remove Robinson; no one investigated plaintiff's claims of discrimination; no one apologized to plaintiff until after the police arrived and then the apology was insincere; defendants violated their own customer service policy. Much of what plaintiff argues is not supported by any evidence. The

---

[4] There is no dispute that plaintiff satisfied the first prong.

10

managers were not called to remove plaintiff but to deal with the problem. Plaintiff admitted to being loud and swearing; there is no evidence that she said only one curse word. The police were called to remove Stringer. Stringer was removed from Marc's; in that way he was "stopped" from his racial rant.

There is no showing that defendants' actions were profoundly contrary to the manifest financial interest of the company. In fact, by telling plaintiff to ignore Stringer, Marc's took actions in its best interests. Had plaintiff moved away from Stringer and continued her shopping, the entire problem would have been averted. There is no evidence that the conduct of the employees was "far outside of widely accepted business norms." Again, plaintiff has not pointed to one case that requires a store to prevent one customer from insulting another. All the store can do when a confrontation arises is call the police and attempt to remove the parties from the premises. Finally defendants did not behave in manner arbitrary on its face. They knew that Stringer was mentally ill; they knew that he was best ignored; and when plaintiff responded by cursing and using the "F" word repeatedly, they took the only reasonable action by attempting to remove both customers. This is not a situation where any employee exhibited any racially charged conduct toward plaintiff. *Cf. Leach v. Heyman*, 233 F. Supp. 2d 906 (N.D. Ohio 2002); *Unroe v. Board of Educ. Rock Hill Local School*, 2006 WL 22081 (S.D. Ohio filed Jan. 4, 2006). Thus the court concludes that plaintiff has not satisfied the third prong of the prima facie case as required by *Christian.*

Even if plaintiff had satisfied the prima facie case, she cannot carry her burden. Defendants have articulated a rational business reason for all actions taken here. Plaintiff was told to ignore Stringer because the clerks were familiar with him and his behavior. They reacted

11

negatively to plaintiff when she began to curse loudly and other customers complained. They called the police to remove Stringer from the store and told plaintiff to leave if she could not stop yelling. They escorted Stringer from the store, never once attempting to touch plaintiff or move her toward the exit. Once the police arrived and Stringer was gone, Gray apologized to plaintiff and invited her to continue shopping. Defendants have articulated legitimate business reasons for every action they took, and plaintiff has not shown one single piece of racial animus in their actions.

The magistrate judge recommends that plaintiff's § 1981 and § 4112.02(G) claims be dismissed.

### B. Intentional infliction of emotional distress.

To recover for intentional infliction of emotional distress plaintiff must prove that defendants' conduct was outrageous and caused her to suffer severe emotional distress. "Outrageous" conduct is defined in *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374-75, 453 N.E.2d 666 (1983), as conduct which exceeds "all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Furthermore, the defendant must have "intended to cause, or have acted with reckless disregard to the likelihood of causing, the emotional distress suffered by the plaintiff." *Blankenship v. Parke Care Ctrs,, Inc.*, 913 F. Supp. 1045, 1051-52 (S.D. Ohio 1995), *citing Brandenburger v. Hilti, Inc.*, 52 Ohio App. 3d 21, 556 N.E.2d 212 (1989). Plaintiff cannot meet this burden of proof.

At most, taking all of plaintiff's allegations as true, Glor and Brezina asked or told her to leave the store because of her loud, vulgar language. Brezina allegedly told her to "shut up" and "get out." Whann laughed when she reported Stringer's behavior and told her to ignore him because he was always like that. No one paid her the kind of attention she thought was appropriate

for the situation. This is far from conduct which is "atrocious, and utterly intolerable in a civilized community."

The magistrate judge recommends dismissal of plaintiff's intentional infliction of emotional distress claim.

### C. Negligent infliction of emotional distress and negligent failure to warn.

A claim of negligent infliction of emotional distress is limited to instances "where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo,* 73 Ohio St.3d 80, 86-87, 652 N.E.2d 664, 669 (1995). To recover, plaintiff must show that (1) the accident created a fear of physical consequences to the person; (2) the fear was of a real danger; (3) the emotional injuries sustained must be serious and reasonably foreseeable. *See High v. Howard*, 64 Ohio St. 3d 82, 85-86, 592 N.E.2d 818 (1992), *overruled on other grounds by Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244 (1993). There was no physical contact here and no claim even of assault. The claim is frivolous and should be dismissed.

Likewise the claim of negligent failure to warn should be dismissed. Plaintiff contends that the claim is not one for negligent infliction of emotional distress. She alleges in her complaint that defendants "breached their duty to warn an invitee of dangerous conditions and make the premises safe." Thus plaintiff must be alleging a physical injury resulting from her entry into Marc's. *See Heiner*, 73 Ohio St. 3d 80, 652 N.E.2d 664. In fact she did not suffer any physical injury at any time related to this incident. Thus the failure to warn claim should be dismissed.

### D. Section 2000, et seq. claim.

Section 2000a(b) defines a "public accommodation" as follows:

13

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
> \*\*\*\*\*
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment or any gasoline station;
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment . . . .

42 U.S.C. § 2000a(b). In *Halton v. Great Clips, Inc.*, 94 F. Supp. 2d 856, 862 (N.D. Ohio 2000), the court was confronted with the question of whether a hair salon was an establishment within the statute. The court responded, "Courts have found covered establishments include, *inter alia:* health spas, golf clubs, and beach clubs, but the Act clearly does not include retail stores **and food markets** because there has been little if any discrimination in the operation of these establishments. *Newman v. Piggie Park Enters.*, 377 F.2d 433 (4th Cir. 1967), *aff'd* 390 U.S. 400 (1968)." (Emphasis added).

Plaintiff argues that defendants "have a number of coin-operated machines including but not limited to an instant lottery machine. . . . Further, the store at issue is a facility engaged in selling food for consumption on premises . . . ." Once again plaintiff stretches the facts. The Marc's store has three soda machines, one sticker machine, one 16 item vending unit/sticker, bubble gum vending machine, and one lottery vending machine. Defendants' Answers to Plaintiff's Third Set of Interrogatories, Ex. 20. It has no snack bar or other area where customers could consume food/beverages. *Id.*

*United States v. Baird,* 85 F.3d 450 (9th Cir. 1996), does not help plaintiff. Even if the case were controlling in this circuit, *Baird* is distinguishable because it involved a 7-11 store with two video game machines. The court looked to whether the "place of entertainment" was one

14

where people go to "amuse themselves and pass the time agreeably. . . . People go to and remain in stores that have video games, in order to play them." *Id.* at 453. It is absurd to think that people go to Marc's to hang around and amuse themselves with a lottery ticket or bubble gum machine.

The magistrate judge recommends that plaintiff's public accommodation claim be dismissed.

IV.

That Stringer's racial epithets were the product of mental illness is not to minimize their completely unacceptable place in today's world. On the other hand, plaintiff's resorting to vulgar and angry language is also unacceptable. One would hope that in the future counsel for plaintiff limits his representation to individuals who have valid claims.

For the above stated reasons, the magistrate judge recommends that Defendants' Motion for Summary Judgment be granted in its entirety.

Date: September 18, 2007                 s:\Patricia A. Hemann
                                                             Patricia A. Hemann
                                                             United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).